Under the information in this case, W.M. Dillinger and John A. Vincent were jointly charged with the unlawful possession of intoxicating liquor. Upon his separate trial the jury returned their verdict finding the defendant Dillinger guilty and fixing his punishment at a fine of $50 and 30 days in jail, and asking the court to suspend the jail sentence. To reverse the judgment rendered on the verdict, he appeals.
The record shows that a motion for new trial was filed on the ground that the verdict is not sustained by sufficient evidence. The motion was denied. That after judgment a supplemental motion for new trial was filed on the ground of newly discovered evidence, supported by the affidavit of codefendant, Vincent, who upon his separate trial was convicted, and wherein affiant states that the defendant Dillinger knew nothing of the whisky found, nor where it was placed; that said affiant placed said whisky under Dillinger's place of business facing Main street in the town of Hooker, which motion was overruled.
It appears that the defendant, Dillinger, operated a two-chair barber shop in the town of Hooker, and lived in a room in the rear of the barber shop, for several months prior to the alleged offense, coming there from Liberal, Kan.; that he was born near Belpre, Edwards county, Kan., and lived there until he removed to Liberal; *Page 162 
that this is the first and the only time he has ever been charged with a violation of the law in either Oklahoma or his native state.
Ben F. Barrick, sheriff of Texas county, testified that his deputy at Hooker, C.F. Tattu, called him up and asked him to come there that evening; that with one or two others he went to Hooker, and after talking to Mr. Tattu they concealed themselves back of the defendant's barber shop, and while there watching he saw the defendant Vincent come through between two buildings and saw him drop a bottle of whisky; that Vincent then went into the toilet, came out, and went into the residence part of the barber shop; that witness went to the front door, and Mr. Tattu and Mr. Clark went to the back door and knocked, and the defendants invited them in; that they searched the inside of the house all over and found nothing, then went out and found the bottle that the defendant Vincent had dropped and found four quart jars of whisky under the rear corner of the barber shop; that he arrested the defendants and brought them to Guymon; that he did not know whether or not the whisky belonged to Dillinger and did not know who put it there, that he did not have a search warrant.
The testimony of the two deputy sheriffs was substantially the same as that of the sheriff.
As a witness in his own behalf, the defendant, Dillinger, testified that he did not own the whisky and did not know who put it there; that he was never before arrested; that he did not drink whisky or have anything to do with whisky in any way; that his codefendant, Vincent, came there that evening about 9 o'clock and asked to stay over night with him; that Vincent often came in from the country, and if he had money stayed at the hotel, but several times he said he was broke and he stayed over night with him; that he never charged him anything. *Page 163 
J.E. Cartmell testified that he had worked in the defendant's shop as a barber for the past year and had never known of any intoxicating liquors being used or kept by this defendant; that he had a conversation with Deputy Sheriff Tattu after the liquor was found, and Mr. Tattu stated he did not think this defendant was guilty of the crime charged, but that he believed that the whisky in question belonged to John Vincent.
J.W. Freeman, of Liberal, sheriff of Seward county, Kan., testified that he had known the defendant, Dillinger, for about fifteen years, during which time he lived at Liberal; that he knew his general reputation for being a law-abiding citizen, and that reputation was good; that during this time witness was sheriff and undersheriff of Seward county for seven years.
Six or seven other witnesses qualified as character witnesses and testified that the general reputation of the defendant, Dillinger, as to being a law-abiding citizen was good.
Upon a careful consideration of the evidence, our conclusion is that the proof connecting the defendant, Dillinger, with the possession of the liquor found, is insufficient to sustain a conviction.
"Where a criminal charge is to be proved by circumstantial evidence, the proof ought to be not only consistent with the prisoner's guilt, but inconsistent with any other rational conclusion." 1 Greenleaf, Evid. 34.
Assuming that the defendant, Dillinger, was innocent, we fail to see how he could have met the testimony for the state in any other way than by the testimony introduced in his behalf.
It appears from an examination of the instructions that the court failed to instruct the jury upon the law of circumstantial evidence. In our opinion it would be destroying the presumption in favor of innocence of the defendant, *Page 164 
and would be subversive of the rule which requires the establishment of guilt beyond a reasonable doubt, to allow this conviction to stand.
For the reasons stated, the judgment is reversed.
EDWARDS and DAVENPORT, JJ., concur.